IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DAVID AZIZ, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No.: _____ |
| ) | JURY DEMAND |
| BELLSOUTH TELECOMMUNICATIONS,) | |
| LLC, a/k/a BELLSOUTH, a/k/a AT&T ) | |
| TENNESSEE, a/k/a AT&T, a/k/a AT&T ) | |
| SOUTHEAST, and a/k/a AT&T INC. ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

COMES NOW the Plaintiff, DAVID AZIZ, by and through his undersigned counsel, and seeks declaratory, injunctive and equitable relief, compensatory and punitive damages, back and front pay, and attorneys fees, court costs, discretionary costs and all other damages to which he is entitled, for discrimination based on his ethnic origin and hostile work environments, and retaliation for opposing unlawful employment practices pursuant to Title VII, the Civil Rights Act of 1964, as amended suffered by the Plaintiff, DAVID AZIZ, while employed by the Defendant. Plaintiff further asserts violations and retaliation under Fair Labor Standards Act ("FLSA").

**COUNT I**
**VIOLATION OF THE CIVIL RIGHTS ACT OF 1964**

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. Jurisdiction over federal issues is invoked under 28 U.S.C. Section 1331 and related provisions. Venue is proper in that the events complained of occurred in the

Page 1 of 9

Case 3:18-cv-00655   Document 1   Filed 07/16/18   Page 1 of 9 PageID #: 1

Middle District of Tennessee.

2. Plaintiff is of mid-eastern/Egyptian origin.

3. Plaintiff filed a charge of origin discrimination against the Defendant with the Equal Employment Opportunity Commission on or about May of 2017. He received a right to sue letter dated on or about May 15 of 2018. (Exhibit A, Right to Sue) This action is filed less than 90 days after receipt of the right to sue letter. The charge of discrimination alleged both discrimination and retaliation for Plaintiff's complaint(s) of discrimination.

4. Defendant BellSouth Telecommunications, LLC is a Georgia Limited Liability Company that does business in the Middle District of Tennessee. It does business in the Middle District of Tennessee under the assumed names of AT&T Tennessee and/or AT&T Southeast. It is also known as the other names listed under the defendant in the caption of this case. Defendant is covered by Title VII and employs more than 15 employees. The Defendant's registered agent for service of process is: CT Corporation System 300 Montvue Rd, Knoxville, TN 37919-5546 USA.

5. Plaintiff was hired by defendant on or about December 2, 2016. After completing a probationary period of three months of employment, he became a permanent employee on or about February 25, 2017.

6. Plaintiffs job duties as a technician were to install internet, television and telephone lines.

7. Each technician had an immediate supervisor and the immediate supervisor was responsible for answering the technician's questions, if any. Plaintiff's initial supervisor was Kibway Walker. Plaintiff had no problems while working under Mr. Walker.

8. Plaintiff was required to attend weekly safety meetings, which also were attended by

other technicians and by management.  During those meetings, safety issues were discussed.

9. Mr. Walker was reassigned and ceased to be Plaintiff's supervisor.  Mr. Kenneth Patterson became Plaintiff's supervisor.

10. Mr. Patterson verbally pushed Plaintiff to violate the employer's safety policies to get the jobs he was assigned done.  Plaintiff did not wish to violate the safety policies, so he asked Mr. Patterson to e-mail him the instructions.  Mr. Patterson failed to do so.

11. At the weekly safety meetings, both Mr. Patterson and Plaintiff were in attendance.  On several occasions, Mr. Patterson interrupted Plaintiff and made fun of his English language skills.  He asked Plaintiff to speak English when he in fact was speaking English and stated that Plaintiff should have better English language skills. Others in attendance at the meeting had no trouble understanding Plaintiff's English. This conduct occurred in the presence of members of Defendant's management.

12. Mr. Patterson  asked Plaintiff on a regular basis in front of others if he "parked his camel" outside.  Plaintiff would respond that he drives a black Nissan.  Mr. Patterson then would ask Plaintiff whether his "camel was made by Nissan" or words to that effect.  Plaintiff asked Mr. Patterson not to disrespect Plaintiff's home country, and if there was criticism, to direct it to Plaintiff.

13. Mr. Patterson told Plaintiff that he was "stupid" and should have better English.  He also told Plaintiff that he hated him.  Mr. Patterson would frequently not return Plaintiff's work related calls on a timely basis.  Plaintiff understood this conduct occurred because of his Egyptian origin.

14. Plaintiff made calls in the ordinary course of business for technical help in the field. Mr. Patterson frequently failed to take Plaintiff's calls. These calls should have been taken by Plaintiff's supervisor. Upon information and belief, Mr. Patterson failed to take the calls because he did not want to deal with someone of Egyptian origin. Upon information and belief, he would return the calls of other technicians, who were not of Egyptian origin.

15. The other technicians that were present at the safety meetings were not of Egptian/middle Eastern origin.

16. All actions taken by Mr. Patterson were taken in the ordinary course of his employment. At all times material to this complaint, Mr. Patterson was acting on behalf of Defendant.

17. Mr. Patterson supervised the other technicians, in addition to Plaintiff, who were not of Egyptian origin. He did not make fun of their English, did not accuse them of parking camels, did not hush them up a meetings, and did not tell them that he hated them. Plaintiff alleges upon information and belief that Mr. Patterson treated him differently and more harshly as a result of his Egyptian origin.

18. Mr. Patterson returned the telephone calls, upon information and belief, of technicians that were not of Egyptian origin and did not criticize their English at the safety meetings and did not interrupt or hush them at the safety meetings.

19. At one of the safety meetings, on or about April 7, 2017, Plaintiff complained to Manager Greg Mason and others about being discriminated against by Mr. Patterson. In addition, the Defendant knew, due to the presence of its supervisors in the safety meetings, that Mr. Patterson made fun of Plaintiff's English, interrupted him, and refused to return Plaintiff's work related calls. On or about April 14, Plaintiff complained that Mr.

Patterson wanted him to violate safety procedures and made him jump an electric fence containing a large dog to get to a pole.

20. The Defendant alleged that Plaintiff was terminated for talking on a cell phone in violation of Defendant's safety policy that prohibits cell phone use while driving a company vehicle. Plaintiff denies that he was on a cell phone while driving.

21. After having made the request for a change in supervisors and complaining about national origin discrimination against him, Plaintiff was sent home from work on or about April 17, 2017, and then terminated on or about April 21, 2017. At 6:04 p.m. Defendant claims to have called Plaintiff for a "coaching discussion" regarding overtime. Plaintiff does not recall such a telephone call.

22. Plaintiff was told that he was terminated due to cell phone use while driving. This termination ground is a pretext. Plaintiff did not use his cell phone while driving and the employer should have known that as the van he was driving is equipped with a tracking device. If the phone record and tracking device are compared, it would show that Plaintiff was not on the telephone while driving. Defendant refused to provide Plaintiff with a copy of the tracking device data. In addition, the supervisor who allegedly reported Plaintiff's alleged telephone use while driving is, upon information and belief, a friend of Mr. Patterson. Similarly situated employees of non-Egyptian national origin were not discharged for violation of the Defendant's cell phone/electronics policy.

23. Plaintiff was terminated because of his Egyptian national origin. In addition or in the alternative, Plaintiff was terminated for complaining about the national origin discrimination against him to the employer and others.

24. Other similarly situated employees who were not of Egyptian national origin were not terminated by the employer.

25. As a direct and proximate result of his termination and as a direct and proximate result of Mr. Patterson's statements to and in the presence of Plaintiff and as s direct and proximate result of Mr. Patterson's failure to take Plaintiff's phone calls Plaintiff was damaged. Plaintiff requests compensatory damages, nominal damages and all other damages that may be available to him, including but not limited to punitive/exemplary damages and attorney fees and costs. He also seeks back pay, front pay and reinstatement.

26. Plaintiff was subjected to a hostile work environment, which environment was hostile to individuals of Plaintiff's national origin and the employer knew or should have known about the hostile work environment.. Plaintiff was forced to attend the meetings where Mr. Patterson humiliated him and enduring the offensive conduct becomes a condition of continued employment. In addition, or in the alternative the continued humiliation by Mr. Patters was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive toward employees of Plaintiff's national origin.

27. The Defendant employer took no steps to remedy the hostile work environment.

28. Plaintiff suffered damages as a result of being subjected to a hostile work environment.

## COUNT 2
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

29. Plaintiff re-alleges paragraphs 1-28 as if fully restated.

30. Plaintiff brings this count in the complaint under the Fair Labor Standards Act of 1938, 29 U.S.C.A. Section 201, et. seq. Jurisdiction over federal issues is invoked under 28 U.S.C. Section 1331 and related provisions.

31. Venue is proper in that the events complained of occurred in the Middle District of Tennessee and upon information and belief, Plaintiff's employment records are located in this district. See 28 U.S.C. Section 1391(b).

32. Defendant is covered by the Fair Labor Standards Act and its overtime provisions.

33. Plaintiff is not exempt from the obligation of the employer to pay him overtime if he works over 40 hours in a work week. Any time over 40 hours should be paid by the employer at time and a half.

34. On or about April 7, 2017, Plaintiff attended a meeting at which the overtime policy of Defendant was discussed. Plaintiff was informed that any overtime must have a reason stated in the notes section of the electronic time card. If no reason is stated, then the overtime will be taken off and Plaintiff will not receive overtime compensation. At that time, Plaintiff was routinely working many hours of overtime, and was not informed that he needed to obtain pre-approval from management for overtime.

35. On April 13, 2017, Plaintiff showed 1.5 hours of overtime. He actually worked that overtime. On April 14, 2018, Plaintiff showed an hour of overtime for stocking and cleaning his company vehicle, which Mr. Patterson had requested of Plaintiff and others.

36. On April 17, Plaintiff was allegedly counseled over the telephone that he should have taken an early lunch on April 13, 2018 instead of incurring overtime. He further was counseled that he could not use overtime to stock his van as the employer believed that

there was sufficient time built into the morning and evening schedule to clean and restock the company van. However, Plaintiff had restocked and cleaned his van in the evening at the specific request of his supervisor, Mr. Patterson.

37. Plaintiff asked if he should ask for approval before working overtime in the future. He was advised that doing so would be appropriate.

38. Plaintiff never was paid for certain overtime he actually worked.

39. In addition, the employer had a policy of not paying overtime unless at least half an hour of overtime was accrued. There were times when Plaintiff worked less than half an hour of overtime, but he was not allowed to report it and was not compensated for that time worked.

40. The employer's failure to pay the Plaintiff for the overtime it allowed him to work is a violation of the Fair Labor Standards Act. Plaintiff seeks all damages to which he is entitled as a result thereof including compensatory damages and attorney fees.

WHEREFORE the Plaintiff seeks all relief and damages to which he may be entitled including the following AND DEMANDS A JURY:

1. Compensatory Damages;

2. Nominal Damages;

3. Reinstatement with prior existing seniority and back pay to include raises and overtime for which Plaintiff would have been eligible;

4. Attorney Fees;

5. Costs and discretionary costs;

6. Exemplary or punitive damages;

7. Such other and further relief to which he may be entitled.

Respectfully submitted,

  /s/ John A. Beam
John A. Beam, III (BPR# 11796)
Irene Haude (BPR# 012104)
Desiree Goff (BPR# 31136 )
Equitus Law Alliance, PLLC
709 Taylor Street
P.O. Box 280240
Nashville, Tennessee 37228
(615) 251-3131
beam@equituslaw.com
irene@equituslaw.com
goff@equituslaw.com